Our next case is Gray v. Washington Department of Transportation Thank you. You can come on up when you're ready. Good morning, Your Honor. Good morning. And good morning to all of Your Honors, and may it please the Court, my name is Nathan J. Arnold. I represent the appellants, former employees of the Washington State Department of Transportation. The first issue here, and I think the easiest one to address briefly is... Do you want to reserve any time for rebuttal? Of course, Your Honor. I would like to reserve three minutes. Three minutes. Okay, great. Thank you so much. Okay, go ahead. And I should move my laptop, too, so I can see the timer. Thank you for reminding me. I'll try and help you out. Thank you, Judge. I appreciate it very much. The first issue here is we assign error to the district court not allowing leave to amend. This was the first complaint that was dismissed on a Rule 12 motion without oral argument. We believe that that is error, that district court should abuse its discretion when it denies leave to amend, which is, we know from the recent Bacon v. Woodard case and others, the district court has a sua sponte obligation to analyze whether or not amendment would truly be futile. And under Rule 15a... Let me ask you this question.  And it relates, I think, at least tangentially to your argument on the leave to amend. It seems to me that the original complaint did not make allegations that these individuals were acting in their individual capacity when making decisions about the exemption and, more importantly, the accommodation. So are you really...this argument with respect to leave to amend, is it so that those kinds of allegations can be made? Because otherwise I think there is, you know, legitimately this question about whether sovereign immunity bars all of the claims because you're seeking monetary relief from individuals. But from what I can tell, until the opening brief, there really wasn't an argument below that you are bringing these claims against individuals in their individual capacity. And thank you, Your Honor. The first answer is yes. One of the things that would be added on amendment is additional allegations, and I think we indicated that in our opening brief in our reply, additional allegations against individuals to bring those claims. Separately and perhaps, well, maybe not more importantly, but as importantly, it appears that the court below, and perhaps we should have been more explicit in our pleadings about this, but prospective injunctive relief, that is reinstatement of individuals who we take the position are wrongfully terminated over their religious objections, among other things, that is something that is not barred by sovereign immunity. So are you seeking something other than monetary relief? Are you seeking prospective injunctive relief or reinstatement? Yes, Your Honor. And so that is prospective injunctive relief, sovereign immunity would not apply. Qualified immunity analysis is irrelevant to that as well. So that is another thing where had we had oral argument, perhaps our pleadings did not spell it out enough. We did use the terms irreparable harm. We did ask for other equitable relief in our prayer, but an opportunity to have presented oral argument to the court would have allowed us to explain that further, and certainly in amendment we could explain that further as well. And where the bases for dismissal were sovereign immunity and qualified immunity, those simply do not apply to prospective injunctive relief. We know that from Verizon v. Maryland, Will v. Michigan State Police, et cetera. But to more directly answer your question, though, Your Honor, yes, there would be the addition of participation in the accommodation and exemption decisions. Do you concede that then the complaint does not make allegations with respect to the individuals and their individual capacity, putting aside the request to file an amended complaint? Your Honor, I think the complaint on its face does make allegations particularly that go towards or show hostility towards religion, which is one of the three bedrock principles that was distilled from Supreme Court precedent in the recent case of— But can you point me to where in the complaint there are allegations made against these individuals and their individual capacity? Because even what you just argued, I agree that there are some allegations that generally talk about that, but they're done in the context of these individuals making these decisions in their official capacity. So if you have some citations to the record and the complaint in particular, I would appreciate that.  Skipping ahead a bit in my script here, Your Honor. Sorry. No, of course, not at all. So, Your Honor, one of the things that we saw is we see many examples of communications that, while medical exemptions will be considered, and not just exemptions, but also accommodations. I think it's really important to—as the Court, I'm sure, is well aware, this is a two-step process. Exemption is not the issue in this case. Exemptions are granted across the board in this context, with few exceptions. I shouldn't say across the board. It's not 100 percent. With few exceptions. One of the big problems here, though, from a free exercise and equal protection standpoint, is that people are receiving their exemptions in the same communication and saying, but we're not going to accommodate you. And that also affects basically all of our claims here as well, because that means we don't have an opportunity to be heard, have a pre-deprivation or post-deprivation hearing. So let's talk about the individual. Yeah, go ahead. Because I want to get to the heart of the matter, in which case the amendments may not matter. Certainly. So in our—we have multiple examples of direct communication on that point. We also have the fact that the very paperwork itself that the individuals had to fill out, our pleadings assert, and I would argue to the Court, had a chilling effect. The individuals that are responsible for creating that paperwork, most specifically I'd point to paragraph 72 and footnote 3 on that point. One of the questions that was asked—actually, it wasn't a question, Your Honor. It was an attestation requirement. When seeking a religious exemption, employees were required to attest that they had never received any medicine in their adult lives. That, I would suggest to the Court, and it's in our pleadings, was a purposeful decision by the Department to chill the number of people who would request religious exemptions and would therefore go to the hostility prong. That is one of the factors, of course, when we're talking about a free exercise claim. We also have the—the decision-makers here can also be liable over qualified immunity where they have the ability to prevent the harm of a clearly established constitutional right. And I would suggest to the Court that there is no one else in these organizations other than the secretary, who is the penultimate bureaucrat after the governor himself, and then those in charge of the HR department or departments who are ultimately making these decisions have the authority to override any decision below, therefore avoiding the deprivation of rights that my client suffered. I want to go back to the substantive claim, so let me start with the due process claim. And it—my impression is there's not really a louder mill violation, and I thought you, to some degree, conceded that in your briefs. Is that correct? I would not—I do not think we've conceded that, Your Honor. One of the places where we—as I just mentioned, a lot of individuals don't have a chance for a louder mill hearing, and we understand the standard for louder mill is not purely high. Right. However, when you receive in the same instance, in the same piece of paper, we accept your religious belief is sincere, but we're not going to accommodate you. That means there is no chance to have that interactive process and have some dialogue. For example, and this is the case, and it's in our pleadings, if I'm someone that works from home and I telework, I believe that louder mill and the other cases, Perry, Davis, et cetera, under the requirement that a public employee have some opportunity to be heard, those employees should have had a chance to explain, I have or I can do my work on the phone or on my computer, and I'm not going to transmit COVID to someone on the phone. There's kind of two parts to it. I understand that you're making, you know, that it's not a facial challenge, and I recognize some of the opposing counsel's argument relates to facial challenges. So that's out the door. You say, okay, we're not going to do that. We're making an as-applied challenge. What I'm searching for is these clearly established constitutional right in the constitutional challenge. So if they make a determination that, and I can see a state law claim here. I can see a state employment law claim, which is not really at issue here, but I could see one. But you're saying there's a federal constitutional violation. So with respect to the due process claim, what is the clearly established right that you're relying on? So there's two in the umbrella of due process that we're particularly focused on here. One is the right to pre- and post-deprivation hearings, including the ability to provide sworn affidavits, which my clients were not afforded, some of whom requested it and were told, and this is in our pleadings, they were told we only offer louder mill hearings if this is disciplinary in nature. But reclassifying something as disciplinary versus non-disciplinary does not affect a public employee's right to a hearing. And I would suggest, Your Honors, that there's nothing much more disciplinary in the employment context than we're going to terminate you, take your pension, and all of your government benefits. And louder mill is the case that we should look at. So louder mill is what you look at for that? Yes, Your Honor. Okay. And with respect to it, you said there's two cases, I thought. So another due process issue as well is under our, get to my right page here, we also have the issue of constitutionally protected privacy and a right to medical and bodily autonomy. Now, typically the government has relied, and this has developed considerably throughout COVID, but there are cases that predate the actions of these defendants, that the Jacobson case, Jacobson versus Massachusetts, is not the end all when it comes to vaccine-related or pandemic-related emergencies. Jacobson was a 14th Amendment case. It was not a First Amendment case. So what's the gap right there? I want to understand the due process nature. You know, we've got a lot of cases flying around here. We also have, you know, pre-COVID, post-COVID, and then we have a lot of law that came after with Bacon and others. So your second constitutional right is the right to medical autonomy? Yes, an interest in bodily autonomy. And to cite, Your Honor, some of these cases, Cruzon, Burst Director of the Missouri Department of Health, which stands for the proposition that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment. That's a case from 1990. Can you give us the cite to that case? Absolutely, Your Honor. That is 497 U.S. 261. And then another case that supports this position or establishes that this is clearly established is Washington versus Glucksburg. That citation is 521 U.S. 702. That's a 1997 case. Strict scrutiny is required when there's a condition of. . . Cite Cruzon in your briefs? I believe we did, Your Honor. I'm looking. . . It is possible we did not. Okay. I'm looking at your briefs. I don't think you did. I'm sure that is the case, then. But, I mean, you know, it matters because here we are trying to figure out. . . Right. These are complicated issues, and I know you acknowledge that and understand that. But we can wave our hands and we can say it's unfortunate, whatever, but we're really. . . What your case is going to rest on, and this will be true of free exercise and equal protection also, is so we could define what's the clearly established constitutional right. Because we could assume there's a violation, possibly. But then we have to say, but what's the clearly established right as of that date for the precise thing that you're asking for? So your right to medical autonomy is your claim that you can't force somebody to have a vaccination, or your claim. . . I mean, because this is different. Nobody's saying you have to have vaccinations just so you can't work here if you don't have it. You're putting this under the banner of your due process claim, though. You're saying that there are really two theories underlying your due process violation. Yes, Your Honor. Right. One is the pre- and post-deprivation hearing at Slaughterville, and then you're saying there's a separate theory, which is this right to medical privacy or autonomy. Correct, Your Honor. Right. And what is, with respect to these plaintiffs, what is the right that was violated on a medical autonomy? So public employees have a right to their continued employment and their continued benefits, their pensions, et cetera, and the government under the case that I just cited, along with Washington v. Glucksberg, where public employment is conditioned on receiving a medical treatment, strict scrutiny must apply. Now, when we look at a recent case from the Ninth Circuit, that's the Health Freedom and Defense Fund v. Carvalho, they're in a Rule 12 posture. The allegations by the plaintiffs that the COVID-19 vaccination was not a true sterilizing vaccine, such as in Jacobson, smallpox vaccine, and some other vaccines we have, then the analysis shifts, and it's no longer a rational basis analysis, it's a strict scrutiny analysis. I didn't see the Health Freedom and Defense Fund case cited either. I don't think it is. Yeah, I don't think it is. So what was the date on that? That's a Ninth Circuit case from 2024, so that would not inform them at the time. That would not be a clearly established right? Correct, Your Honor, absolutely. However, these prior cases from the 90s do establish that strict scrutiny applies when public benefits are conditioned upon the receipt of a medical treatment. And the reason health freedom is important is it draws that distinction between a true sterilizing vaccine that's going to affect your neighbor in the next cubicle over, as opposed to something that is a medical treatment that's going to protect you individually, which when, in that case, the Ninth Circuit, this court found that that was what was pled, and in Rule 12 posture that is accepted as true, and that is similar to what we pled. And, Your Honor, I'm running out of my time, and I don't think I've touched on free exercise. So there's a series of cases there that establish as well that the government cannot, without passing strict scrutiny, deprive someone of their public benefits. That starts with the Sherbert case, it goes to Wisconsin v. Yoder, Thomas Review Board, and these are cases from the 60s, and now we're up to 1981 with Thomas Review Board. Yes, Your Honor. Do you all have any questions now about this, or can we wait until rebuttal? I'm fine with hearing one rebuttal. I'm fine to wait. Okay. I'll give you three minutes on rebuttal. Thank you so much. Thank you very much. Good morning. May it please the Court. Zach Bacalus for Appelese. The fundamental flaw in appellant's claims is that they seek to constitutionalize the accommodation provisions of Title VII and ADA. Statutory claims, the complaint does not plead, and whose exhaustion requirements plaintiffs have not met. But neither the free exercise clause, nor the equal pay clause, nor the due process clause requires government employers to make religious or medical accommodations for their employees, or to provide any sort of particularized pre-termination accommodation process, such as a formal hearing. Appellants cite no decision of the Supreme Court, this Court, or really any federal court holding otherwise, and that fact is fatal to their suit because the district court dismissed it on qualified immunity grounds. To prevail, then, appellants have to show not just a possible or plausible right, but they have to show that WSDOT officials, in their individual capacity, violated a constitutional right that was clearly established at the time of the accommodation decision, which here was in October of 2021. This means that existing precedent must have placed the constitutional violation beyond doubt. Because the governing law actually supports the opposite conclusion, appellants have failed to show that any of their three preserved federal claims should have survived dismissal. Before taking up those claims in their particular, I want to address a point Judge McKeown alluded to and an overarching argument that appellants make, which is that because they've articulated their claims, they've styled their claims as as-applied challenges, somehow a different substantive constitutional standard should apply. That's incorrect. As the Supreme Court explained in Bucklew v. Presythe, classifying a lawsuit as facial or as applied does not speak at all to the substantive rule of law necessary to establish a constitutional violation. Thus, the same established constitutional standards that this court and many other courts have applied in adjudicating facial challenges to vaccine mandates apply to this case as well. So let me ask you this. If we were to accept the arguments made by your friend on the other side this morning that there are these additional theories that suggest that there were constitutional violations like the medical privacy, maybe not the pre- and post-deprivation hearing issue, but this argument that we're hearing about today, is there a scenario in which, if they're allowed to amend their complaint, they could, in fact, plead facts of individualized and specific violations of law under an as-applied framework? No, Judge Desai, and that's because the doctrinal infirmities here are baked into the extensive allegations in the complaint. To take the medical privacy claim for one, that's a species of a substantive due process claim, not a procedural due process claim, and plaintiffs have not articulated a substantive due process claim either in this court or in the district court. So that substantive due process theory is waived. They did raise it as a state law claim in the district court in their complaint. They called it a privacy claim under... Privacy claim under the Washington law. Correct, Judge McEwen, but they have not attempted to make a similar claim at any stage of the proceedings as a species of federal substantive due process. So under the due process, their argument under Laddermill is that you're entitled to something, something more than nothing, and in their view, they got nothing. So they cite Laddermill as the clearly established law. So... You say, well, no, you're mixing and matching Title VII or Washington law against discrimination, employment cases with constitutional cases. So would you address that? Before I address the law, I think the most important thing is to address the facts, because I think given the record here, it's more confusing, whereas the law is super clear. Plaintiffs do not allege that they received no hearing or no discussion. What the complaint alleges is that they did not receive a formal adjudicative hearing prior to their termination. However, they recognize that every single plaintiff who was denied an accommodation received a form letter. That's what they call it in the complaint, a form letter. So the exact same thing. And that form letter, which is identified at... It's Exhibit AI of the complaint, 3ER564. That form letter says to every single plaintiff, you may request a meeting to discuss this decision. And some of the plaintiffs said they did request a meeting, and they had a meeting. One of the meetings is actually described, and it's quite a substantive back-and-forth between Plaintiff Pineris and the so-called Euler expert who HR provided during that meeting. So there's not an allegation that they didn't have an opportunity to discuss their accommodations and separations. They just said it wasn't a formal enough process or that they weren't taken seriously enough. But that's really a substantive disagreement with the standard that they said WSDOT applied here, which they said was too high, too strict, too stringent. But this court in Bacon, in the unpublished decision in Bacon, rejected the exact same argument from the plaintiffs, who happened to be represented by Appellant's Counsel here. They said it was a sham hearing process. That they applied overly stringent standards to the denial of accommodations. But the Bacon court said that this is really just the firefighters saying they did not like the substance of the city's construction of the proclamation in their individual cases. That is not a procedural due process objection. And some people did get exemptions, or accommodations, I should say, correct? Correct. On a religious basis. Correct. That might go somewhat to the equal protection, but it does also go to the due process, doesn't it? Well, it certainly shows, because they freely admit that some employees who were in jobs where the risk could be sufficiently mitigated or eliminated, received medical and religious accommodations. That by itself shows that this was not a sham process. A sham process means that they've decided everyone's not going to get a religious accommodation or a medical accommodation. So they've really pleaded themselves out of that sham claim, even if it were cognizable under these facts. Now, I want to just back up and say our primary position is that Loudermill doesn't apply at all here. Because unlike the Loudermill case itself, which involved individualized discipline of an individual employee, this is really the application of a generally applicable, effectively legislative provision, the proclamation, to all the employees. And under United States v. Locke, when a government alters substantive rights through rules of general applicability, the government provides constitutionally adequate process by enacting the statute, publishing it, and affording those with an inspiration opportunity to comply. And so, again, the unpublished decision in Bacon v. Woodward holds just that, that because it was this generally applicable proclamation, there was no level of process required other than notification, notice of its provisions, and an opportunity to comply, which appellants concededly received here. With respect to the... I'm going to turn to the free exercise claim, unless there's additional questions about procedural due process. So the fundamental problem with plaintiff's free exercise claim is that it hinges on a... on a disparity between the grant of religious accommodations on the one hand and medical accommodations on the other. But this Court and many courts, courts of appeals, the First Circuit, the Second Circuit, the Third Circuit, have all held that religious and medical exemptions are not comparable for free exercise purposes because they do not undermine the government's asserted interests in protecting employee or student health in a comparable way. And that comes directly from this Court's decision in Doe v. San Diego Unified School District, and it's also in the Doe v. Mills of the First Circuit, Spivak v. City of Philadelphia in the Third Circuit, and the multiple We the Patriots USA decisions out of the Second Circuit. So, again, here, the clearly established law actually points the opposite direction. Now, so if you could have a vaccine mandate that says religious accommodations, no, none, but medical accommodations, yes, some, a fortiori, simply positing a disparity, a distinction in the rate of grants of religious accommodations and medical accommodations can't possibly render the law not generally applicable. And as for their allegations of non-neutrality, what plaintiffs call a impermissible hostility towards religious beliefs, these are simply conclusory allegations. Mr. Arnold, when asked about what additional allegations could you add, what allegations do you have here that support the free exercise claim, he said, well, they have a hostility towards religion and stating that medical accommodations will not be considered. So this pops up several times in their brief and in the complaint, the idea that medical accommodations will not be considered. What it really comes from is a single email from defendant Pelton and it's alleged in paragraph 346 of the complaint and then it's reproduced as well as exhibit AW on ER 652. And what Pelton is saying here is that only temporary accommodations for medical reasons will be approved, such as pregnancy, breastfeeding, cancer treatment, clinical trials. And that itself, although it's not necessary to decide because medical accommodations and religious accommodations aren't germane, that itself explains why there might have been a disparity in medical accommodations versus religious accommodations because as the record shows, when someone either had just gotten COVID or was pregnant or breastfeeding or for some sort of temporary medical condition or even if they decided to get vaccinated, if their religious accommodation requests were denied and then they said, okay, I've decided to get vaccinated, the record shows that they could have waited and they're not going to make it to the deadline so they have to go on a leave of absence, but that was also treated as a medical accommodation. So the idea that that reveals some sort of animus is totally false if you actually look at the email that defendant Pelton said. And again, that's paragraph 346 of the complaint or exhibit AW of the complaint. So that's all they have. All their allegations of animus where they're quoting the Facebook pages or messages of various managerial employees, whether they're defendants or not, what that reveals is a desire to get people vaccinated. There's not a single reference to religion. There's not a single reference to religious objectors. It doesn't rise nearly to the level of what you saw in say a Masterpiece cake shop where there was a specific animus. There was an impermissible hostility towards the people who exercise medical accommodations for their religious beliefs. It just isn't there. The last point I want to address is the Equal Protection Clause, which is subsumed within and coextensive with the Free Exercise Claim. Locke v. Davey of the Supreme Court, Oren v. Barclay and Doe's 136 v. Mills clearly show that when the allegation is religious-based discrimination, an Equal Protection Clause falls along with a Free Exercise Claim when you can't make it. There are a few other issues that Mr. Arnold raised that I want to briefly address. The claim for injunctive relief here is waived. There's no mention in the complaint of a request for injunctive relief, and although there was a passing reference to it, I believe, to reinstatement in the district court, neither the opening brief nor the reply brief mentions reinstatement or any form of injunctive relief. So that's an issue that this court need not take up. It's clearly been forfeited. What about your position that, in fact, based on the district court proceedings and then now going into the Court of Appeals, that both Free Exercise and Equal Protection were forfeited? I think our argument is that the qualified immunity arguments as to those were forfeited because they didn't specifically address them. I think you can address qualified immunity in a way that... You can address the merits in a way that also is addressing qualified immunity, but because their pleadings below, their briefing below was so scattershot, it really didn't isolate... It didn't do exactly what this court has done today. It said, what is the case? They didn't say, what is the case that gives you a clearly established law showing a free exercise violation here or a due process violation here? Unless the court has... Oh, one... I'm sorry. One last thing. Mr. Arnold briefly mentioned a post-deprivation process. There's no reference in any of the briefs or anything below to post-deprivation relief. They are focused on the lack of a pre-termination formal hearing before they were separated, not after. And for those reasons and those stated in the briefs, we ask that this court affirm the district court in all respects. Thank you. Good morning again, Your Honor. Go ahead. Quickly, qualified immunity analysis by the appellate court is actually taken in light of all the relevant precedent. It doesn't necessarily have to be cited to the court below. That comes from Elder versus Holloway, 510 U.S. Right, but, you know, it is a little helpful to us in preparation. I'm looking at... I know these cases in broad sense just from our experience here, but your citing cases, they're not in the briefs, and it might be helpful next time. I apologize for that, Your Honor, and I'm sure it is more than a little helpful. Thank you, Your Honor. I appreciate that suggestion. A couple of issues. Again, this is not a facial challenge, specifically because the governor's proclamation allowed a constitutional pressure release valve, as it were. It required compliance with the state constitution, the federal constitution, ADA, Title VII, WALAD, et cetera. This is just not a facial challenge. Also, the proclamation is there to stem the spread of COVID, not to protect the workforce. It's a poor distinction from some of the cases that my colleagues cited that are out of circuit that I would contrast to the Bacon case, which is in circuit here. We have pled more than just a... being disgruntled with the level of formality or the type of hearings that we receive. There are allegations or complaint of people asking for meetings, not receiving them. And I would point again to this, what's supposed to be a two-step process. That is, we approve or deny your exemption, and then we're supposed to meet and deal with accommodation where the pervasive, as we've pled, the pervasive message, both explicit and implicit, was we're just not going to accommodate you if you have a religious... I've got a question on that, because there is some mixing and matching between employment law and accommodation and the constitutional right. And so what I'm kind of searching for is once you get down to the details of, like, well, I didn't get my hearing or I didn't like how they treated the accommodation, because there's the exemption and there's the accommodation, what is the best case we can look at for accommodation and a constitutional right? I would point the court to Perry, Davis v. Scheer, and Loudermill, the cases that I mentioned previously. Moving with what little time I have left on our First Amendment claims, one of the things that I would have amended to add, which was a document that we were not aware of when we wrote this complaint, is the guidance from the Office of Financial Management that instructed agencies to review all accommodation decisions every 60 days. So this idea that medical is only temporary and religious is permanent, that does not comport with the guidance that was provided to the agencies. And even more fundamentally than that, that itself is treating a comparable secular activity more favorably than religious. The fact there is even an option for a temporary accommodation under a secular basis, and that was not an option under a religious, is violative of the Free Exercise Clause, particularly in the context... If you have a religion, it's not like pregnancy. Right, it's not going to change. Certainly not. I hope that it's not going to go away in nine months. That's true, Your Honor. But what could have gone away in nine months is the pandemic itself. We're operating under an Emergency Powers Act of the governor, which again, we're not challenging those Emergency Powers Acts, but by their very nature, they're temporarily limited. So this is a context where providing someone a temporary accommodation really does make a difference. That person with a secular temporary accommodation, if it's a 60-day, if it's a 14-day, we don't know when this emergency is going to resolve. And because this is a governor's proclamation, not legislative, it is going to resolve at some point. So that secular individual receiving the temporary accommodation might be able to, for lack of a better term, run the clock out on the pandemic itself, or run the clock out on the emergency power. So it is actually treating a comparable secular activity better than a religious one. And we have a line of cases that are clearly established, starting from Schubert to Yoder, Thomas, Hobby, Lukumi, Calvary, Roman Catholic, and then Tandon and Fulton, all of which were decided prior to the termination of these individuals, that stand for the proposition that you cannot treat a comparable secular activity better than a religious one. And we show that... If you were to disagree with your complaint, as now drafted and as brought up on appeal on this 12B-6, the two things I've heard that you might add is this new thing, which first I've heard of this, is guidance to the agency. And you might pinpoint some other individuals, correct, for their individual capacity claims? Yes, Your Honor, and this is... The two things that you might put in an amendment. And to make more clear, our seeking relief of prospective injunctive relief. Okay. And I think this is one of the fundamental problems that we have with Rule 12 issues within qualified immunity. A lot of the government's argument today was fact-intensive. And as the non-moving party, I don't think they get to put those type of facts into the record where this is based exclusively on our complaint. It's difficult for this court to decide large constitutional issues on a non-existent factual record. And that's why it's a difficult position for courts to be in where we have dismissals based on qualified immunity, particularly where the court is required to construe in all of the authority that's available, and the facts are taken as true. We're not construing the authority in any particular way. It's the facts. But here the question, the overriding question in the entire appeal, is trying to pinpoint the legal issue. And that doesn't have to do so much with the facts. Let's say we assume a constitutional violation based on how everyone might construe the facts, and they would be in your client's favor. We still have to get past this constitutional barrier. So that's what I've been focusing on. And I appreciate your focus on the facts, but I don't think it answers the question that we're faced with. Well, perhaps just as a last piece, Your Honor, to help guide the court there, with the Fulton case and then going back through Tandon, Roman Catholic archdiocese, and the cases that those rely upon, those are cases that all predate the decision to terminate these folks over their religious objections. And that, I would suggest to the court, that having to choose between their free exercise rights and their government benefits is something that can only, that choice can only be foisted upon someone if it passes strict scrutiny, which it would not be able to pass here. And that is an issue that we should be able to go back to the trial court and try, Your Honor. Thank you very much. Thank you, Your Honor. Thank you. We thank both counsel for their very helpful arguments this morning, and this matter will be submitted.
judges: McKEOWN, THOMAS, DESAI